# In the United States Court of Federal Claims

No. 23-1252
(Filed under seal: September 27, 2023)
(Reissued for Publication: October 12, 2023)[1]

| | | |
|---|---|---|
| *************************************** | | |
| PURPOSE BUILT FAMILIES FOUNDATION, INC. | * * * | |
| Plaintiff, | * * | RCFC 12(b)(1); Motion to Dismiss; Lack of Subject-Matter Jurisdiction; |
| v. | * * | 28 U.S.C. § 1491(b); 38 U.S.C. § 2044; 31 U.S.C. § 6301; 38 C.F.R. § |
| THE UNITED STATES, | * * | 62.1. |
| Defendant. | * | |
| *************************************** | | |

*Alan Grayson*, Alan Grayson, Esq., Orlando, FL, counsel for Plaintiff.

*Joshua W. Moore*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant. With whom was *Jennifer L. Hedge*, U.S. Department of Veterans Affairs, of counsel.

## OPINION AND ORDER

**DIETZ, Judge.**

Plaintiff, Purpose Built Families Foundation, Inc. ("PBFF"), brings a bid protest challenging a decision by the United States Department of Veterans Affairs ("VA") to award grant agreements through the Supportive Services for Veterans Families ("SSVF") program to two South Florida based non-profit organizations: United Way of Broward County, Inc. ("United Way") and the Advocate Program. The government moves to dismiss PBFF's complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") arguing that this Court lacks bid protest jurisdiction because the SSVF agreements are grant agreements, not procurement contracts. For the reasons explained below, the Court finds that the SSVF agreements are grant agreements and that, therefore, the Court lacks jurisdiction to hear PBFF's bid protest. Accordingly, the government's motion to dismiss is **GRANTED**.[2]

---

[1] This Opinion and Order was filed under seal on September 27, 2023, *see* [ECF 27], in accordance with the Protective Order entered on August 10, 2023. *See* [ECF 11]. The parties were given an opportunity to identify protected information, including source selection, proprietary information, and confidential information, for redaction. The parties filed a joint status report on October 2, 2023, wherein they indicated that no redactions were necessary. [ECF 29].

[2] The government further argues that PBFF's argument that it has a procurement contract with the government is waived and estopped, that PBFF's claims are barred under 28 U.S.C. § 1500, and that this case primarily concerns matters of contract administration over which this Court lacks jurisdiction. *See* [ECF 12] at 24-33. Since the Court

I.   **BACKGROUND**

PBFF is a non-profit corporation located in Fort Lauderdale, Florida that specializes in the provision of veteran services. Compl. [ECF 1] ¶ 6. Since 2012, PBFF has held SSVF agreements under award number 19-FL-25. *See* AR 223;[3] Pl.'s Resp. to Def.'s Mot. to Dismiss [ECF 17] at 7.[4] In 2021, the VA Office of Business Oversight ("OBO") audited PBFF in connection with its SSVF agreements. AR 690. The audit uncovered numerous expenditures reflecting questionable costs. *See* AR 692. Based upon the initial results of the audit, the VA notified PBFF on May 11, 2022, of its intent to terminate the SSVF agreements. *See* AR 690-91.

On May 17, 2022, PBFF filed suit in the U.S. District Court for the Southern District of Florida. *See Purpose Built Fams. Found. Inc., v. United States,* No. 22-60938 (S.D. Fla. filed May 17, 2022). PBFF argued that the VA's termination of its SSVF agreements was arbitrary and capricious, and sought a temporary restraining order ("TRO") to enjoin the VA from terminating the agreements. *See id.* The district court granted PBFF's request for a TRO, and on May 19, 2022, the VA rescinded the termination letter to allow PBFF an opportunity to submit written responses to the OBO's audit. *See Purpose Built Fams. Found., Inc. v. United States,* 634 F. Supp. 3d 1118, 1121 (S.D. Fla. 2022). Shortly thereafter, in October 2022, the district court dismissed the action as moot. *See id.* at 1127. PBFF appealed the dismissal to the U.S. Court of Appeals for the Eleventh Circuit, where the appeal remains ongoing. *See Purpose Built Fams. Found., Inc. v. United States,* 634 F. Supp. 3d 1118 (S.D. Fla., Oct. 6, 2022), appeal docketed No. 22-14057 (11th Cir. Dec. 1, 2022).

In February 2023, OBO issued a revised audit which, despite PBFF's responses, continued to question PBFF's expenditures. *See* AR 663-89. The VA issued a formal SSVF agreement termination notice to PBFF in March 2023, which indicated that the termination would occur in 7 days. AR 690-702. However, the VA subsequently agreed to voluntarily stay termination of the SSVF agreements pending PBFF's appeal to the Board of Veterans' Appeals ("BVA") and the Court of Appeals for Veterans Claims ("CAVC"). Compl. [ECF 1] ¶ 21. The CAVC denied PBFF's petition and motion to stay on August 25, 2023.[5] *See Purpose Built Fams. Found. v. McDonough*, No. 23-2114 (Court of Appeals for Veterans Claims).

On August 7, 2023, PBFF filed the instant bid protest in this Court. [ECF 1]. The government moved to dismiss PBFF's complaint pursuant to RCFC 12(b)(1) on August 25, 2023. [ECF 12]. PBFF responded to the government's motion to dismiss on September 11, 2023,

---

finds that PBFF's complaint must be dismissed because the SSVF agreements are grants, it need not address these other arguments.

[3] The Court cites to the Administrative Record filed by the government at [ECF 13] as "AR ___."

[4] All page numbers in the parties' briefings refer to the page numbers generated by the CM/ECF system.

[5] On August 28, 2023, following the CAVC's denial, the VA terminated PBFF's SSVF agreements. *See* Def.'s Resp. to Pl.'s Notice of Suppl. Authority [ECF 22] Ex. B. The parties entered a "Transition of Services Agreement," which provided that PBFF could "reasonably draw from its FY23 funds for activities necessary and related to the transition of services from PBFF to [United Way] and Advocate Program[.]" *Id.*

[ECF 17], and the government replied on September 18, 2023, [ECF 21]. The government's motion is fully briefed, and the Court has determined that oral argument is not necessary.

## II. LEGAL STANDARD

Motions to dismiss for lack of subject-matter jurisdiction are governed by RCFC 12(b)(1). When a defendant moves to dismiss a complaint for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1), "the plaintiff bears the burden to show by a preponderance of the evidence that jurisdiction is proper." *Ak-Chin Indian Cmty. v. United States*, 80 Fed. Cl. 305, 307 (2008) (citing *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988)). In deciding a motion to dismiss for lack of jurisdiction, "a court is required to accept as true all factual allegations pleaded." *Frankel v. United States,* 842 F.3d 1246, 1249 (Fed. Cir. 2016) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). Jurisdiction is a threshold issue that the Court must address before proceeding to the merits of a case. *See Remote Diagnostic Techs. LLC v. United States*, 133 Fed. Cl. 198, 202 (2017) (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94 (1998)). If the Court determines that it lacks subject matter jurisdiction, it must dismiss the case. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *United Keetoowah Band of Cherokee Indians in Okla. v. United States*, 104 Fed. Cl. 180, 183 (2012).

## III. DISCUSSION

In its complaint, PBFF protests "a current attempt by the [VA] to divert all work away from [PBFF] to two other local organizations in South Florida, *i.e.*, [United Way] and the Advocate Program." [ECF 1] ¶ 1. PBFF claims that "[t]his attempt by the VA is illegal under procurement statutes and regulations," *id.*, because the "VA is improperly acquir[ing] [] property or services for the direct benefit or use of the United States Government from United Way and the Advocate Program by grant rather than by contract," *id.* ¶ 2 (internal quotations and citations omitted) (alteration in original). The government argues that the Court should dismiss PBFF's complaint for lack of subject-matter jurisdiction because "[t]his Court's bid protest jurisdiction . . . is limited 'exclusively' to 'procurement solicitations and contracts.'" [ECF 12] at 16 (quoting *Hymas v. United States*, 810 F.3d 1312, 1317 (Fed. Cir. 2016)). According to the government, "[i]n this case, there can be no reasonable dispute that the agreements at issue are grant agreements, not procurement contracts." [ECF 12] at 17. Plaintiff counters that "an award involving the expenditure of appropriated funds that obligates the awardee to furnish services that support the mission and goals of an executive agency is a 'contract'; and that all agency actions in relation to that contract, . . . is 'procurement,' within the meaning of the Tucker Act; and therefore, that this Court has . . . jurisdiction." [ECF 17] at 12. Because the Court finds that the SSVF agreements awarded by the VA are grant agreements, the Court lacks jurisdiction over PBFF's bid protest, and its complaint must be dismissed.

To determine whether PBFF's complaint falls within the purview of this Court's bid-protest jurisdiction, the Court must decide whether the VA has statutory authority to enter into grant agreements. *See Hymas*, 810 F.3d at 1317.[7] Section 2044 of Title 38 of the United States

---

[7] The Federal Circuit's analysis in *Hymas* is instructional. In *Hymas,* the Federal Circuit was tasked with determining whether the United States Fish and Wildlife Service's ("Service") agreements were cooperative agreements, rather than procurement contracts. *Hymas*, 810 F.3d 1312. It concluded that the agreements were cooperative agreements and that the Court of Federal Claims thus lacked jurisdiction under the Tucker Act to hear

3

Code, under which the SSVF program was promulgated, states: "[f]inancial assistance under this section shall consist of grants for each such family for which an approved eligible entity is providing or coordinating the provision of supportive services." 38 U.S.C. § 2044(a)(2). It further states that "[t]he Secretary shall provide such grants to each eligible entity that is providing or coordinating the provision of supportive services." 38 U.S.C. § 2044(a)(3)(A). Thus, the plain language of the governing statutory provisions not only suggests that the VA has the authority to enter into grant agreements, but in fact mandates that the VA provide grant agreements through the SSVF program. *See Myore v. Nicholson*, 489 F.3d 1207, 1211 (Fed. Cir. 2007) ("Statutory interpretation begins with the language of the statute, the plain meaning of which we derive from its text and its structure. If the statutory language is clear and unambiguous, the inquiry ends with the plain meaning.") (citations omitted); *see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (stating that courts "must give effect to the unambiguously expressed intent of Congress").

The Federal Grant and Cooperative Agreement Act ("FGCAA"), 31 U.S.C. § 6301, further supports the conclusion that the SSVF agreements are grant agreements. *See Hymas*, 810 F.3d at 1325 (applying the FGCAA to define a cooperative agreement). It provides that an agency shall use a procurement contract when "the principal purpose . . . is to acquire . . . property or services for the direct benefit or use of the United States government[.]" 31 U.S.C. § 6303(1). It further provides that an agency shall use a grant agreement when "the principal purpose of the relationship is to transfer a thing of value to the State or local government or other recipient to carry out a public purpose of support or stimulation authorized by a law of the United States[.]" 31 U.S.C. § 6304(1). Thus, "whether an instrument reflects a 'procurement contract' or a '[grant] agreement' turns upon the principal purpose of the relationship." *Hymas,* 810 F.3d at 1327.

Here, the SSVF agreements were not for the direct benefit of the United States government. The applicable statutory and regulatory provisions provide that the purpose of the agreements is to facilitate supportive services to low-income veteran families. *See* 38 U.S.C. § 2044(a) (stating that the SSVF program "shall provide financial assistance to eligible entities approved under this section to provide and coordinate the provision of supportive services . . . *for very low-income veteran families occupying permanent housing.*") (emphasis added); 38 C.F.R. § 62.1 (stating that the purpose of the SSVF program is to provide "supportive grants to eligible entities to facilitate the provision of supportive services *to very low-income veteran families who are occupying permanent housing*.") (emphasis added). The FY2023 Notice of Funding Availability ("NOFA") echoes that "[t]he SSVF Program's purpose is to provide supportive services grants to private non-profit organizations and consumer cooperatives who will coordinate or provide supportive services *to very low-income Veteran families*[.]" AR 360 (emphasis added). Thus, the SSVF agreements were for the direct benefit of the veteran families, *not* the government. That the agreements indirectly benefit the VA by furthering its mission of

---

the bid protest. *Id.* In reaching this conclusion, the Federal Circuit undertook a two-step analysis. *See id.* First, it considered whether the Service had the statutory authority to enter into cooperative agreements, reasoning that, if it did not, then the Service could only have negotiated procurement contracts subject to Tucker Act review. *Id.* at 1324. It then considered whether the Service's agreements met the definition of a cooperative agreement as defined by the Federal Grant and Cooperative Agreement Act ("FGCAA"). *Id.* at 1327. The FGCAA treats cooperative agreements and grant agreements similarly, distinguishing them only by the amount of anticipated government involvement. *See* 31 U.S.C. §§ 6304(2), 6305(2).

4

reducing homelessness among veterans does not render the agreements procurement contracts. *See Hymas*, 810 F.3d at 1328.

The Court is not persuaded by PBFF's assertion that its case is identical to *CMS Contract Management Services v. Massachusetts Housing Finance Agency*, 745 F.3d 1379 (Fed. Cir. 2014). [ECF 17] at 15. In *CMS,* a federal agency entered an intermediary relationship with a third party to procure services that the federal agency was legally required to provide itself. *Id*. at 1386. The Federal Circuit concluded that, in the case of such an intermediary relationship, the proper instrument is a procurement contract. *Id*. at 1385. The Court reasoned that "transferring funds to the [intermediary] to transfer to the [eligible entity] is not conferring anything of value on the [intermediary], especially where the [intermediary] [has] no rights to, or control over, those funds[.]" *Id.* at 1386. In the instant case, the VA did not provide SSVF agreements to United Way and the Advocate Program to outsource the performance of its duties. Rather, pursuant to 38 U.S.C. 2044(a), it provided financial assistance directly to the eligible entities so that they could "provide and coordinate the provision of supportive services" to veteran families. 38 U.S.C. § 2044(a). "Put another way, the [VA] did not enter into the [SSVF agreements] to obtain a service from [PBFF], but rather negotiated with [it] to provide assistance that would further [the VA's] goals[.]" *Hymas*, 810 F.3d at 1329 (distinguishing *Hymas* from *CMS*).

Moreover, unlike in *CMS*, United Way and the Advocate Program have rights to, and substantial control over, the funds distributed to them pursuant to the SSVF agreements. When these organizations sought SSVF agreements, they were invited to submit a letter of intent outlining their own program concepts. *See* AR 4 (NOFA stating that all applicants must apply using Letters of Intent and that to be eligible for renewal, the applicants' program concepts must be substantially the same as the program concept of the grantees' current award). Once they received SSVF agreements, they had discretion over the use of the funds. AR 9 (NOFA outlining generalized requirements for the SSVF funds). Thus, the nature of the SSVF agreements is markedly different to those in *CMS*, where the third-party intermediary had little to no control over the funds provided to it.

Having concluded that the SSVF agreements are grant agreements, the Court must now determine whether it has jurisdiction over PBFF's bid protest. This Court has jurisdiction under the Tucker Act to render judgment on a bid protest action brought "by an interested party objecting to . . . any alleged violation of statute or regulation in connection with a procurement." 28 U.S.C. § 1491(b)(1).[8] "[T]his provision speaks 'exclusively' to 'procurement solicitations and contracts." *Hymas*, 810 F.3d at 1317 (quoting *Res. Conservation Grp., LLC v. United States*, 597 F.3d 1238, 1245 (Fed. Cir. 2010)). Therefore, "relief under 1491(b)(1) is unavailable outside the procurement context." *Res. Conservation*, 597 F.3d at 1245; *see, e.g., Hymas*, 810 F.3d at 1330-31 (holding that the Court of Federal Claims does not have jurisdiction over cooperative

---

[8] This Court also has jurisdiction pursuant to 28 U.S.C. § 1491(a)(1) over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquated or unliquidated damages in cases not sounding in tort." In its complaint, PBFF asserts that this Court has jurisdiction over its complaint pursuant to 28 U.S.C. § 1491(b). [ECF 1] ¶ 8. It notes, however, that "there may also be jurisdiction under 28 U.S.C. § 1491(a), but [it] does not believe that it will be necessary to reach that question." *Id.* n.3. This is insufficient to establish jurisdiction under § 1491(a). *See Reynolds*, 846 F.2d at 748.

agreements). Accordingly, because the SSVF agreements are grant agreements, and not procurement contracts, PBFF's complaint must be dismissed for lack of jurisdiction.

## IV. CONCLUSION

For the reasons set forth above, the government's motion to dismiss, [ECF 12], is **GRANTED**. Plaintiff's motion for preliminary injunction and application for TRO, [ECF 19], and plaintiff's renewed request for TRO, [ECF 25], are **DENIED AS MOOT**.[6] The Clerk is hereby **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Thompson M. Dietz<br>
Thompson M. Dietz, Judge

---

[6] PBFF filed a motion for preliminary injunction and application for TRO on September 12, 2023. [ECF 19]. Therein, it stated that, absent interim relief from the Court, it will cease operations on September 30, 2023, as a result of the government transitioning veterans who are currently receiving supportive services from PBFF to the United Way and the Advocate Program. *Id.* at 10 n.2. On September 20, 2023, the Court held a status conference to discuss PBFF's motion. *See* [ECF 23]. The Court indicated its intent to defer ruling on the motion for injunctive relief and to resolve it concurrently with the government's pending motion to dismiss. The parties agreed upon, and the Court memorialized, a schedule that allowed for a fully briefed motion for injunctive relief prior to September 30, 2023. *See* [ECF 24]. On September 25, 2023, plaintiff filed an emergency motion for TRO, explaining that the government intended to "direct PBFF's homeless veteran clients to United Way and the Advocate Program at the close of business [September 25, 2023]." Pl.'s Renewed Req. for TRO [ECF 25] at 1. The government subsequently filed an opposition to PBFF's initial motion for injunctive relief and TRO and PBFF's renewed motion for TRO. [ECF 26]. Because the Court finds that it lacks jurisdiction over PBFF's complaint, PBFF's motions for injunctive relief are denied as moot.